IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONNA McCOMMON,

       Plaintiff,

    v.

NANCY A. BERRYHILL, *Acting Commissioner of Social Security*,

       Defendant.

CIVIL ACTION FILE NO.

1:16-CV-03379-TWT-CMS

## FINAL REPORT AND RECOMMENDATION

On February 15, 2013, Plaintiff Donna McCommon ("Plaintiff") filed a Title II application for a period of disability and disability insurance benefits ("DIB"), alleging that she became disabled on January 14, 2013. (Tr. 27, 76, 157-160, 234). The Social Security Administration ("SSA") denied Plaintiff's application initially and on reconsideration. (Tr. 76-102). On February 5, 2015, Plaintiff appeared and testified at a hearing before an Administrative Law Judge ("ALJ"). (Tr. 43-74). The ALJ issued an unfavorable decision on July 6, 2015, denying Plaintiff's claims. (Tr. 24-37). In the decision, the ALJ gave only limited weight to the opinions of two of Plaintiff's treating physicians. Plaintiff requested review of the decision by the Appeals Council ("AC"). The AC denied review on July 11, 2016, making the ALJ's decision the final decision

of the Commissioner.  (Tr. 3-10).  This case is now ripe for judicial review, under 42 U.S.C. § 405(g).

Plaintiff raises three issues on appeal:  (1) whether remand is warranted because the ALJ failed to provide good reasons for discounting medical opinions and ignored other opinions; (2) whether the ALJ's physical RFC assessment is supported by substantial evidence and, if not, whether the ALJ erred by failing to order a physical consultative examination; and (3) whether the Appeals Council erred by failing to consider additional evidence submitted to the Appeals Council, namely Dr. Hoeper's consultative psychological assessment dated December 30, 2015, and by denying review.  (Doc. 23, Pl.'s Br.).

For the reasons discussed below, I **RECOMMEND** that the Commissioner's decision be **REVERSED AND REMANDED** for further proceedings not inconsistent with this Report and Recommendation.

## I.   SEQUENTIAL EVALUATION PROCESS

Under the regulations promulgated by the Commissioner, a reviewer must follow a five-step sequential analysis when evaluating a disability claim.   20 C.F.R. § 404.1520(a).  This analysis is as follows:

1.    The ALJ first determines whether the claimant is currently working; if so, the claim is denied.

2.    The ALJ determines solely on the basis of the medical evidence whether the claimed impairment is severe; if it is not, the claim is denied.

3.    The ALJ decides, again, only using medical evidence, whether the impairment equals or exceeds in severity certain impairments described in the Commissioner's Listing of Impairments; if it does, the claimant is automatically entitled to disability benefits.

4.    The ALJ considers whether the claimant has sufficient residual functional capacity ("RFC") to perform his past work; if so, the claim is denied.

5.    The ALJ decides, on the basis of the claimant's age, education, work experience, and RFC, whether the claimant can perform any other gainful and substantial work within the economy.  If the claimant is able to do other work, the ALJ finds that the claimant is not disabled.  If the claimant cannot make an adjustment to other work and meets the duration requirement, the ALJ will find that the claimant is disabled.

20 C.F.R. § 404.1520(a)(4).

## II.    <u>STANDARD OF REVIEW</u>

This court's role in reviewing the factual determinations of the Commissioner is limited.  <u>Gibson v. Heckler</u>, 779 F.2d 619, 622 (11th Cir. 1986).  In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the

evidence, or substitute its judgment for that of the Commissioner.  Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court's only role is to determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings.  Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982).  "Substantial evidence" means such "relevant evidence as a reasonable person might accept as adequate to support a conclusion."  MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).  Substantial evidence is more than a scintilla, but less than a preponderance.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  However, substantial evidence is not present if the ALJ "does not have before him sufficient facts on which to make an informed decision."  Ford v. Sec'y of Health and Human Servs., 659 F.2d 66, 69 (5th Cir. 1981).  Failure to apply the correct legal standards or to provide the reviewing court with a sufficient basis on which to determine that the correct legal principles have been followed -- or that substantial evidence exists -- mandates a reversal.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.   **BACKGROUND FACTS**

Plaintiff was 60 years old at the time of the ALJ's decision.  (Tr. 41, 157).  Plaintiff stated in claim forms that she has a high school education.   (Tr. 197).

4

However, she testified at the hearing that she attended four years of college and earned a degree in communications. (Tr. 49). Plaintiff worked for Fulton County, Georgia, for thirteen years as a medical records clerk and then for three years in Human Resources as a personnel recruiter. (Tr. 50-51, 197). Plaintiff is a veteran and receives 20% disability compensation from the Veterans Administration ("VA") and disability retirement benefits from Fulton County on a monthly basis. (Tr. 29, 47-50, 180-181). Plaintiff alleges disability due to depression, post traumatic stress disorder ("PTSD"), anxiety, tinnitis, chronic pain, and high cholesterol. (Tr. 32, 194, 196). Plaintiff claims that she stopped working on January 14, 2013 "[b]ecause of [her] condition(s)." (Tr. 196-197).

## IV.  **MEDICAL HISTORY**

Plaintiff's brief accurately sets forth the medical and mental health diagnoses and treatment that Plaintiff received from 2012 through 2015 chiefly from the Atlanta VA Medical Center. The Commissioner has not disputed Plaintiff's recap of her medical history. Therefore, it need not be repeated in detail here. In general, since 2009, Plaintiff has been treated for a variety of physical and mental conditions, including migraine headaches; degenerative joint disease; chronic pain in her neck, shoulders, and back; tingling in her hands; myofascial pain in her neck and shoulders; PTSD; major

5

depressive disorder, recurrent; osteoarthrosis; anemia; insomnia; tinnitus; carpal tunnel syndrome; cervicalgia; vertigo; a fractured right hand; dizziness; and abnormal gait. (Doc. 23 at 7 & n.3). She has been treated with medication, psychotherapy, physical therapy, occupational therapy, acupuncture, a TENS unit, and has been prescribed hearing aids, a cane for balance, an elevated toilet seat, as well as a sound generator to treat her tinnitus and other conditions. X-rays and other radiological tests have shown mild multilevel degenerative changes in her neck, at C3-4, C4-5 and C6-7, and in her back at L3-4 through L5-S1, and degenerative joint disease in both feet. (Tr. 33-34, 342, 490, 493, 513, 591, 692-693). The tests also showed evidence of posterior disc bulging or protrusion in her cervical spine, causing moderate spinal canal stenosis and mild ventral cord flattening at C3-4 and C4-5. (Tr. 494).

Plaintiff's records from the VA indicate that in or around January 2013, due to her deteriorating conditions, Plaintiff decided to apply for disability retirement from Fulton County and sought assistance from her medical providers at the VA. Plaintiff's VA mental health records at the time note that Plaintiff presented in significant distress, reporting that her fears of being out after dark were interfering with her ability to participate in an evening therapy group, she had impaired concentration, and her fear and avoidance of men and increased difficulties were contributing to problems at work.

(Tr. 327).  On January 7, 2013, Jacqueline Williams, M.D., VA Trauma Program Staff Psychiatrist, wrote a letter to Fulton County's Employee Retirement System stating that Plaintiff had a medical history significant for chronic PTSD and depressive disorder, which were associated with severe stress intolerance, increased startle reflex, social isolation, and moderate mood disregulation.  (Tr. 263).  Dr. Williams opined that Plaintiff's prognosis is "chronic and it is unlikely that she will be able to return to the level of functioning that will allow her to effectively do her work.  In my opinion, Ms. McCommon is chronicly [sic] disabled and is unable to perform her current job." (Id.).  In February 2013, Dr. Williams completed a Mental Medical Assessment form and assessed Plaintiff's ability to sustain work-related activities as being able to sustain a satisfactory level of functioning for only 75-80 percent of an eight-hour workday. (Tr. 33, 263-65).

After reviewing Plaintiff's medical records, application for disability retirement, and the results of a psychiatric evaluation by the county physician, Fulton County's medical director, Sultan Simms, M.D., wrote a letter dated February 11, 2013 to Fulton County's pension administrator finding that Plaintiff was totally and permanently disabled and recommending that Plaintiff be given disability retirement without prejudice.  (Tr. 180).

7

At the administrative hearing in this case, Plaintiff testified that she currently receives 20% VA disability benefits, as well as disability retirement benefits from Fulton County.  (Tr. 47-48; see also Tr. 1022).

On June 13, 2013 and September 5, 2013, non-examining state agency consultants (George Hughes, Ph.D and Sylvia Robles-Meyers, M.D.) reviewed Plaintiff's medical and mental health records and opined that Plaintiff had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation of extended duration.  (Tr. 79-81, 94). They found that due to Plaintiff's anxiety and depression, Plaintiff was able to understand and carry out simple instructions, but she was moderately limited in her ability to understand, remember, and carry out detailed instructions, maintain sustained concentration and persistence, perform activities within a schedule, maintain regular attendance, complete a normal workday or workweek without interruptions from psychologically-based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods.  (Tr. 82-83, 97-99).  The consultants opined that Plaintiff was also moderately limited in her abilities to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers

or peers without distracting them or exhibiting behavioral extremes, and to respond appropriately to changes in the work setting; she also had mild to moderate memory issues.  (Tr. 83, 98-99).  They predicted that her pace may be slow on occasions as a result of her depression,  memory issues, and occasional interference from anxiety and intrusive thoughts and worry.  (Tr. 84, 99).  The consultants opined that Plaintiff's current mental state prevented her from returning to any of her previous skilled work, but that there were other occupations existing in the national economy that she was capable of performing, and therefore was not disabled.  (Tr. 85, 100-101).  They assigned "great weight" to the diagnostic opinions of Plaintiff's treating psychiatrist at the VA, Dr. Jacqueline Williams,[1] and found Plaintiff's allegations of PTSD and depression "fully credible."  (Tr. 79, 94).

On June 30, 2014, Dr. Williams completed a psychiatric functional capabilities assessment form.  (Tr. 471, 475-478).  Dr. Williams diagnosed Plaintiff with PTSD, MDD recurrent, anhedonia, poor sleep, poor concentration, and poor appetite, with a Global Assessment of Functioning ("GAF") rating of 40-45, indicating serious

---

[1] Except for Dr. Williams's opinion that Plaintiff was chronically disabled and unable to perform her current job, which the consultants did not credit, stating that "opinion re disability is reserved to the Commissioner."  (Tr. 94).

9

impairment.[2]  (Tr. 475).  Dr. Williams noted that Plaintiff's symptoms included an increased startle reflex, an avoidance of crowds, nightmares on a daily basis and flashbacks, as well as feelings of hopelessness and worthlessness with suicidal ideation at the time of presentation.  (Tr. 475).  Dr. Williams listed Prozac and Trazodone as Plaintiff's current medications.  Dr. Williams opined that Plaintiff had a number of moderately severe limitations that significantly affected her ability to function, including avoiding physical danger; interacting with other people in a socially acceptable manner; participating in previously valued activities; supervising or managing others; performing under stress when confronted with emergency, critical, unusual or dangerous situations; and performing tasks in which speed and sustained attention are critical aspects. (Tr. 477-478).  Dr. Williams opined that Plaintiff also had

---

[2]  The GAF scale is a mental health rating on a scale of 0-100 that estimates a person's psychological, social, and occupational capacities.  A GAF score of 41-50 reflects "[s]erious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 32-34 (4th ed. 2000).  A GAF score between 51 and 60 indicates "[m]oderate symptoms (*e.g*, flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational or school functioning (*e.g.*, few friends, conflicts with peers or co-workers)."  Id.  A score of 61-70 indicates: "Some mild symptoms (e.g., depressed mood and mild insomnia), OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, with some meaningful interpersonal relationships."  Id.

10

moderate limitations that affected, but did not preclude, her ability to understand, remember, and carry out written instructions and complex verbal instructions; respond appropriately to supervision; perform work requiring regular contact with others; perform intellectually complex tasks requiring higher levels of reasoning and/or math and/or language skills; perform varied tasks; and make independent judgments. (Id.).

In 2010, 2013, and 2014, Plaintiff received treatment at the VA Audiology and Mental Health clinics for severe tinnitus, or ringing in both ears. (Tr. 472-473). Plaintiff complained that the tinnitus regularly interfered with her sleep and her ability to carry out normal daily activities. (Tr. 472). VA clinical audiologist Steven Benton saw Plaintiff on February 24, 2014 for a tinnitus consultation. In an opinion letter dated June 18, 2014, Dr. Benton noted that veterans with coexisting mental health disorders (such as Plaintiff's diagnoses of PTSD related to military sexual trauma and major depressive disorder, recurrent, moderate) often reported greater disturbance from tinnitus than those without mental health disorders. (Id.). He further opined that Plaintiff's sleep disorder and dizziness may also affect how severe she perceives the tinnitus. (Id.). At a visit in May 2014, Dr. Benton had Plaintiff complete a tinnitus reaction questionnaire, or TRQ, which Dr. Benton stated was a reliable and validated measure of subjective tinnitus-related distress. Scores ranged from 0-104 points. The

11

VA considered a score of 31 or greater as indicative of significant tinnitus-related distress. Scores of 70 or greater were consistent with severe psychological distress related to tinnitus. Plaintiff's total TRQ score was 82. (Tr. 473). In his opinion letter, Dr. Benton explained in great detail the bi-directional relationship between mental health and tinnitus, and cited research and various studies that had been conducted showing the correlation between depression, PTSD, and tinnitus. Specifically with regard to Plaintiff, Dr. Benton opined that her mental health diagnoses had a substantial impact on her perception of her tinnitus severity. (Id.).

## V.   **THE ALJ'S DECISION**

After review of the entire record and testimony at the administrative hearing, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2017. (Tr. 29, Finding No. 1). The ALJ found that Plaintiff has not engaged in substantial gainful activity since January 14, 2013, Plaintiff's alleged onset date. (Id., Finding No. 2). The ALJ found that Plaintiff has the following severe impairments: PTSD, depression, mild degenerative joint disease, and osteoarthritis. (Id., Finding No. 3). The ALJ concluded that Plaintiff's history of hyperlipidemia, hemorrhoids, tinnitus, and anemia do not impact Plaintiff's ability to perform the basic work activities delineated in the residual functional capacity ("RFC") set forth in her

12

decision, and therefore, those impairments are non-severe.  (Tr. 29-30).

As Finding No. 4, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"), including Listings 12.04 and 12.06.  (Tr. 30).  The ALJ found that Plaintiff has mild restriction with regard to activities of daily living, moderate difficulties in social functioning, and concentration, persistence, or pace.  (Tr. 30).  She further found that Plaintiff has experienced no episodes of decompensation of extended duration.  Because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "marked limitation" and "repeated" episodes of decompensation, each of extended duration, the ALJ determined that the "paragraph B" criteria were not satisfied.  (Tr. 30).  The ALJ further determined that the evidence failed to establish the presence of "paragraph C" criteria.  (Tr. 31).

After consideration of the record, the ALJ determined that Plaintiff has the RFC to perform medium work as defined in the regulations, but with the following limitations:  Plaintiff is able to lift and carry up to 50 pounds occasionally and 25 pounds frequently; she is able to stand and/or walk for six hours per eight-hour day and sit for six hours per eight-hour day with normal breaks.  Plaintiff is able to climb ramps

and stairs frequently; climb ladders, ropes, and scaffolds occasionally; balance frequently; and perform frequent flexion, extension, and rotation of the neck. The work is limited to simple unskilled occupations and routine repetitive tasks free from fast-paced production. Plaintiff is able to understand, remember, and carry out simple instructions and make simple work-related decisions with only minor, infrequent changes in work processes and environment. Plaintiff is able to perform work in a nonpublic area with no contact with the public, and interaction with coworkers and supervisors is limited to occasional or no more than one-third of the workday. Plaintiff would be working with things rather than people and there would be no demand or requirement for interpersonal interaction. (Tr. 31, Finding No. 5). In making this determination, the ALJ accorded "little weight" to the opinion of Plaintiff's treating audiologist at the VA, Dr. Steven Benton, and only "limited weight" to the opinions of Plaintiff's treating psychiatrist, Dr. Jacqueline Williams. (Tr. 29, 35).

At step four, the ALJ found that Plaintiff could not perform any past relevant work. (Tr. 35, Finding No. 6).

At step five, based on vocational expert ("VE") testimony, the Medical-Vocational Guidelines, and the DOT, the ALJ found that there were a significant number of other jobs in the national economy that Plaintiff could perform. (Tr. 35,

14

Finding No. 10).  The ALJ therefore found that Plaintiff was not disabled, pursuant to 20 C.F.R. § 404.1520(g), from Plaintiff's alleged onset date through the date of the ALJ's decision.  (Tr. 36-37, Finding No. 11).

As noted earlier, on July 11, 2016, the AC denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner.  (Tr. 3-9).  Plaintiff's appeal is before this Court for consideration.

## V.   **DISCUSSION**

As in all Social Security disability cases, Plaintiff bears the burden of establishing the existence of a disability.  See Lucas v. Sullivan, 918 F.2d 1567, 1571 (11th Cir. 1990); Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  As noted earlier, Plaintiff raises three issues on appeal:  (1) whether remand is warranted because the ALJ failed to provide good reasons for discounting medical opinions and ignored other opinions; (2) whether the ALJ's physical RFC assessment is supported by substantial evidence and, if not, whether the ALJ erred by failing to order a physical consultative examination; and (3) whether the Appeals Council erred by failing to consider additional evidence submitted to the Appeals Council, namely Dr. Hoeper's consultative psychological assessment dated December 30, 2015, and by denying review.  (Doc. 23, Pl.'s Br.).

15

A.   **Substantial Evidence Does Not Support the ALJ's**
     **Assessment of the Medical Opinions of Record**

The law on treating physicians' opinions is well-settled.   Under the Commissioner's rules and regulations, the medical opinion of a treating physician "*must* be given controlling weight, *i.e.*, it must be adopted," if it is "well-supported and not inconsistent with the other substantial evidence in the case record."   Social Security Ruling ("SSR") 96-2p, 1996 WL 374188 (S.S.A.), at *1 (July 2, 1996); accord 20 C.F.R. § 404.1527(c)(4).   Even if a treating physician's medical opinion is not well-supported, it "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected.   Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927."   SSR 96-2p, at *4.   Those factors, which apply to all medical opinions (whether or not from a treating source), include: (1) length of the treatment relationship and the frequency of examinations, (2) nature and extent of the treatment relationship (*i.e.*, how involved the doctor was in the patient's treatment and how much information he gathered through examinations and testing), (3) how well the opinion is supported with medical evidence, (4) how consistent the opinion is with the record as a whole, and (5) whether the doctor has a relevant specialization.   20 C.F.R. § 404.1527(c).

16

The law requires the ALJ to state with particularity the weight he or she gave the different medical opinions and the reasons therefor, and the failure to do so is reversible error. Sharfarz v. Bowen, 825 F.2d 278, 279-80 (11th Cir. 1987); MacGregor, 786 F.2d at 1053; see also SSR 96-2p, at *5.

In this case, the ALJ stated that she discounted and accorded "little weight" to the opinion of Plaintiff's treating audiologist at the VA, Dr. Steven Benton, and  only "limited weight" to the opinions of Plaintiff's treating psychiatrist, Dr. Jacqueline Williams.  (Tr. 29, 35).

As the ALJ's basis for discounting Dr. Benton's opinion, the ALJ stated that Dr. Benton's report and opinion were "not attended with clinical and diagnostic findings demonstrating that tinnitus causes significant limitation in the claimant's hearing or overall ability to function."  (Tr. 29).  Progress notes from the VA, however, indicate that Dr. Benton  evaluated and treated Plaintiff for tinnitus at least seven times between November 2013 and October 2014.  (Tr. 503-506, 535-537, 555-558, 579-584, 617-620, 665-667, 683-684, 700-703, 714-715).  On November 4, 2013, Plaintiff was administered a comprehensive audiological assessment and diagnosed with bilateral sensorineural hearing loss and subjective tinnitus.  (Tr. 700-702).  In February 2014, Plaintiff's tinnitus was rated "9" on a 0-10 point severity scale.  (Tr. 683).  In May

2014, Plaintiff reported that her tinnitus had worsened as a result of trauma-recall therapy that she was undergoing with one of her VA mental health providers. (Tr. 617). On June 10, 2014, Plaintiff was diagnosed with abnormal gait, vertigo, and hearing loss, and prescribed the use of a cane. (Tr. 585). On June 11, 2014, Dr. Benton's records note that Plaintiff continued to complain of difficulties communicating and the negative impact tinnitus was having on her social life. (Tr. 580). Plaintiff reported that due to her tinnitus, she frequently could not understand what others were saying and that rather than ask for multiple repetitions, she often would respond in some way and hope that she was responding appropriately. (Id.).

Although the ALJ accurately noted that audiometric testing showed that Plaintiff's hearing acuity for both ears was normal, Dr. Benton's treatment records explained that 20% of tinnitus patients have normal hearing on routine hearing tests, similar to Plaintiff. (Tr. 580-581). Dr. Benton's June 2014 report noted that Plaintiff's tinnitus was consistently rated as severe on a Tinnitus Grading Scale, that Plaintiff reported hearing her tinnitus "almost always," that it regularly interfered with her sleep and with her ability to carry out normal daily activities, and that Plaintiff was prescribed a bedside sound generator to counteract her tinnitus-related sleep disturbance. (Tr. 472). Dr. Benton's findings were consistent with those from Plaintiff's earlier and

18

subsequent visits to the VA's audiology clinic.  Dr. Benton opined that the level of

distress that Plaintiff experienced from her tinnitus was exacerbated by her coexisting

mental health conditions, including PTSD and major depressive disorder, as well as

Plaintiff's sleep disorder and dizziness.  (Tr. 472).  He found that Plaintiff's score on

the Tinnitus Reaction Questionnaire was consistent with severe psychological distress

related to tinnitus.  (Tr. 473).  He opined that Plaintiff's mental health diagnoses had "a

substantial impact on her perception of her tinnitus severity," and he supported his

opinion with research findings.

Treatment records show that Dr. Benton prescribed hearing aids to treat

Plaintiff's tinnitus (Tr. 503) and administered a variety of tinnitus-related distress

measures to assess (1) the efficacy of his various treatment modalities, (2) the

percentage of waking and sleeping hours that Plaintiff was disturbed by the tinnitus, and

(3) Plaintiff's success in managing her tinnitus symptoms (Tr. 504, 535-537).

There are no contradictory medical source statements in the record concerning

Plaintiff's tinnitus.  Nevertheless, the ALJ accorded "little weight" to Dr. Benton's

opinion.  (Tr. 29).

With regard to the opinion(s) of Plaintiff's treating psychiatrist, Dr. Williams, the

ALJ stated that she accorded only "limited weight" because Dr. Williams's opinion was

"inconsistent with the remaining evidence that demonstrates the claimant responded well to treatment and improved her ability to interact socially." (Tr. 35). Dr. Williams opined in a mental status supplemental questionnaire dated June 30, 2014 that Plaintiff had "moderately severe" limitations in her ability to avoid physical danger, interact with others in a socially acceptable manner, participate in previously valued activities, supervise or manage others, perform under stress, and perform tasks in which speed and sustained attention were critical aspects. (Tr. 33, 477-478). The ALJ found that Dr. Williams's limitations were inconsistent with progress notes indicating that Plaintiff had reported benefitting from trauma-focused therapy and peer- supported group therapy at the VA, and that she had gone to the DeKalb Farmers Market with a friend, taken a walk, and joined the YMCA. (Tr. 33). The VA's records reflect that such activities were part of Plaintiff's mental health treatment. (Tr. 544-545). The evidence of record does not indicate that Plaintiff engaged in those activities without difficulty or close support or on anything but an infrequent, limited basis. In any event, such activities are not necessarily inconsistent with Dr. Williams's opinions about Plaintiff's limitations with regard to her mental abilities to function in a work environment and Plaintiff's serious issues with social isolation.

20

With regard to the non-examining state agency consultants' opinions, the sole physical RFC assessment in the record was completed by non-examining state agency consultant Abraham Oyewo, M.D. on October 21, 2013.   (Tr. 95-97).   Despite numerous treatment notes in the record reflecting that Plaintiff had multilevel degenerative changes in her cervical and lumbar spines, limited range of motion in her neck, degenerative joint disease in her feet, myofascial pain that interfered with her ability to use her bilateral upper extremities, diminished sensation in her upper and lower extremities, "significant diffuse allodynia" [a pain response out of proportion to the stimulus] and weakness (Tr. 591), and that Plaintiff was prescribed a right-handed cane to use for balance (Tr. 381-382), Dr. Oyewo nevertheless opined that Plaintiff was capable of performing medium work, that she was able to lift and/or carry 50 pounds occasionally and 25 pounds frequently; climb ladders, ropes, and scaffolds occasionally; balance frequently; stoop occasionally; kneel frequently; crouch occasionally; and crawl frequently.   (Tr. 31, 95-97).

As noted earlier, two other non-examining state agency consultants (George Hughes, Ph.D. and Sylvia Robles-Meyers, M.D.) reviewed Plaintiff's mental health records and opined that Plaintiff had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in

maintaining concentration, persistence, or pace, and no repeated episodes of decompensation of extended duration.  (Tr. 79-81, 94).  They found that due to Plaintiff's anxiety and depression, Plaintiff was able to understand and carry out simple instructions, but she was moderately limited in her ability to understand, remember, and carry out detailed instructions, maintain sustained concentration and persistence, perform activities within a schedule, maintain regular attendance, complete a normal workday or workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 82-83, 97-99).  The consultants opined that Plaintiff was also moderately limited in her abilities to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and to respond appropriately to changes in the work setting; she also had mild to moderate memory issues.  (Tr. 83, 98-99).  They found that her pace may be slow on occasions as a result of her depression, memory issues, and occasional interference from anxiety and intrusive thoughts and worry.  (Tr. 84, 99).

In the ALJ's opinion, the ALJ noted (erroneously) that the non-examining state agency consultants had determined that Plaintiff was capable of performing medium

22

work activity <u>with no substantial mental limitations</u>,[3] and that the ALJ had accorded "some weight" to the consultants' opinions to the extent that the consultants determined that Plaintiff was not precluded from performing all work activity.  (Tr. 35, emphasis added).  Nevertheless, the ALJ noted (again erroneously) that she had assessed "a more limiting" RFC than the state agency consultants, "based on the record as a whole, giving the claimant full benefit of the doubt regarding her complaints of worsening back pain and difficulty with social interactions."  (<u>Id.</u>).

In actuality, the ALJ appears to have given the non-examining state agency consultants' opinions full or controlling weight, as the ALJ adopted their exact limitations in her RFC determination, finding that Plaintiff could perform medium work with the exertional and postural limitations assessed by Dr. Oyewo, in only simple, unskilled occupations with routine, repetitive tasks free from fast paced production requirements, with only occasional contact with coworkers and supervisors and no contact with the public.  (Tr. 31).  In this circuit, however, "[t]he opinions of nonexamining, reviewing physicians,... when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial

---

[3]  Two of the nonexamining state agency consultants found that Plaintiff's "current mental state prevents her from returning to skilled work."  (Tr. 85, 100).

evidence." <u>Sharfarz v. Bowen</u>, 825 F.2d 278, 280 (11th Cir. 1987) (citation omitted); <u>Swindle v. Sullivan</u>, 914 F.2d 222, 226 n.3 (11th Cir. 1990).

The ALJ may reject any medical opinion if the evidence supports a contrary finding. <u>Sryock v. Heckler</u>, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam). In this case, however, the only opinions that indicated that Plaintiff could meet the mental and physical RFC requirements to perform medium work were those of the non-examining state agency consultants. Their opinions were entitled to little weight and, standing alone, do constitute substantial evidence. <u>Sharfarz</u>, 825 F.2d at 280.

Ultimately, it is not apparent from the ALJ's decision what evidence the ALJ relied on in reaching her decision that Plaintiff is not disabled. The ALJ stated that she accorded only "some" weight to the non-examining state agency consultants' opinions, "little" weight to Plaintiff's audiological evaluations, and merely "limited weight" to the only treating or examining physician's opinion in the record about Plaintiff's mental abilities to perform work-related activities. <u>See</u> SSR 85-15, 1985 WL 56857, at *4 (S.S.A. 1985).[4] The ALJ's decision provides no explanation for what evidence in the

---

[4]   SSR 85-15 provides that, "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities

record supports her RFC assessment that Plaintiff is capable of performing work that involves "frequent flexion, extension, and rotation of the neck." (Tr. 31). Apart from the reviewing, non-examining state agency consultants' RFC assessments, there is nothing to contradict the limitations assessed by Dr. Williams, Plaintiff's treating psychiatrist, or to support a finding for medium exertional work.

Courts in this circuit have repeatedly held that the Commissioner's fifth-step burden cannot be met by a lack of evidence, but instead must be supported by the RFC assessment of a treating or examining physician. See, e.g., Davis v. Colvin, 2016 WL 4506782, at *6 (N.D. Ga. 2016); Walker v. Astrue, 2013 WL 5354213, at *18 (N.D. Ga. 2013); Murphy v. Astrue, No. 8:06-cv-1654-T-TBM, 2008 WL 126592, at *4-5 (M.D. Fla. Jan. 10, 2008); Doss v. Astrue, No. CA-07-0375-C, 2007 WL 4570551, at *3 (S.D. Ala. Dec. 20, 2007). Such an assessment is particularly warranted where, as here, the ALJ has rejected significant portions of the only mental RFC assessment in the record performed by a treating or examining physician, and there is no physical RFC assessment at all in the record that was performed by a treating or examining physician. The Eleventh Circuit has explained that to "attempt to evaluate disability without

---

would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base." Id.

AO 72A
(Rev.8/82)

personal examination of the individual and without evaluation of the disability as it relates to the particular person is medical sophistry at its best." Spencer on behalf of Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985) (citations omitted). From the record before the Court, there is simply no basis upon which this Court can find that the ALJ's RFC determination is supported by substantial evidence. In the absence of medical evidence to establish that Plaintiff can perform the mental and physical requirements of medium work, I conclude that the ALJ failed to establish her fifth step burden of proving that Plaintiff is capable of performing other work. On this basis, remand is warranted.

For the reasons stated, I RECOMMEND that this case be REVERSED and REMANDED for further development of the record regarding the extent of Plaintiff's physical and mental impairments and their effects on her ability to do basic work activities. 20 C. F. R. § 404.1521(b). If necessary, the ALJ should obtain consultative examinations to assess Plaintiff's mental and physical functional capacities. While I recognize that the burden of providing the medical support for a claim of disability is on the claimant, the ALJ is nonetheless obliged to fully and fairly develop the medical record. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003); Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997); 20 C.F.R. § 416.912(d) (stating that "[b]efore we

make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application"). In light of this obligation, an ALJ must order a consultative examination or examinations when "such an evaluation is necessary for him to make an informed decision." <u>Holladay v. Bowen</u>, 848 F.2d 1206, 1209 (11th Cir. 1988); <u>see also</u> 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (providing that, "before we make a determination that [a claimant] is not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary"); SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996) (stating that the ALJ must "make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC.").

### B.  Plaintiff's Other Arguments

Plaintiff has asserted additional arguments, including, *inter alia*, that the ALJ erred by failing to properly weigh all opinion evidence, that the ALJ's RFC is not supported by substantial evidence, and that the Appeals Council should have considered and credited the medical opinion letter dated December 30, 2015 from Edwin W. Hoeper, M.D., discussing his findings from his psychiatric examination of Plaintiff the day before. (Tr. 1022-23). Because this case is due to be remanded for the reasons discussed above, the analysis of the ALJ may change. Therefore, I do not find it

necessary at this stage of the review process to discuss Plaintiff's other arguments.  On remand, Plaintiff's other arguments and evidence should also be considered.

### V.   <u>CONCLUSION</u>

For the foregoing reasons, I **RECOMMEND** that the Commissioner's decision be **REVERSED** under sentence four of 42 U.S.C. § 405(g) and the case **REMANDED** to the Commissioner for additional proceedings not inconsistent with this Report and Recommendation.

**IT IS SO RECOMMENDED**, this 2nd day of January, 2018.

_____
**CATHERINE M. SALINAS**
**UNITED STATES MAGISTRATE JUDGE**

AO 72A
(Rev.8/82)